101 So.2d 328

### J. V. STRIPLING

v.

### Warren E. ODOM et al.

### 1 Div. 753.

Supreme Court of Alabama.
March 6, 1958.

Adams, Gillmore & Adams, Grove Hill, and Geo. J. Moore, Mobile, for appellant.

Hurst & Williams, Chatom, for appellees.

STAKELY, Justice.

The appellant J. V. Stripling sued appellees Warren E. Odom and wife to recover damages for the breach of a lease agreement between the appellees as "lessor" and appellant as "lessee". Defendants' demurrer to the amended complaint was sustained, whereupon plaintiff took a nonsuit and appealed.

The gist of the complaint is the breach of an agreement entered into by the parties on January 9, 1954, a copy of which is attached to and made a part of the complaint. It is alleged that although plaintiff has complied with all its provisions on his part, defendants have failed to comply with the following provisions thereof, viz.:

"And plaintiff alleges further that shortly after plaintiff assumed possession of the leased premises an authorized representative of the State Board of Health inspected the leased premises and submitted to plaintiff a list of items requiring correction in and about said premises to make the same conform to the minimum requirements of the State Board of Health; a true copy of such list of requirements is attached to a previous amendment to this complaint, marked Exhibit A and is hereby, by reference thereto, incorporated herein and made a part hereof for all purposes; and plaintiff alleges that he

called upon the defendants to make the corrections thus required by the State Board of Health and that the defendants failed or refused to make or cause to be made such corrections; whereupon, plaintiff expended large sums of money upon said premises for the sole purpose of meeting the requirements thus imposed by the, State Board of Health; and although plaintiff has called upon defendants for reimbursement, the defendants have failed or refused to reimburse plaintiff for such expenditures."

Attached to the complaint is an exhibit denominated "Poultry Slaughter House and Processing Plant Inspection Report," made by the Department of Public Health, and addressed to J. V. Stripling, proprietor of Chatom Poultry Company. It recites that "This constitutes a written notice to you to correct the violations indicated below within a period of 111 days," followed by a list of requirements, many of which are checked by an X mark.

This lease agreement purports to lease and let to the lessee a certain portion of "Old Richardson Ice Plant Building," situated on designated lots in the Town of Chatom, including equipment, fixtures and machinery. It was to run for two years with right of renewal, for a monthly rental of $100. The instrument is somewhat lengthy and we will state only those features of it which are necessary to a decision of the question presented. From the instrument it appears that the lessors (appellees) were already engaged in the operation of a slaughter house on the leased premises, that the agreement entered into contemplated the continued operation by lessors of the business of slaughtering, confined to cattle and other meat animals, while lessee would engage in the slaughtering and processing of poultry. Apparently some of the premises and equipment would be needed in common by the parties, while certain other was to be used exclusively by one or the other.

In paragraph 1 of the "terms and conditions" upon which the lease was made, we find the following:

"The Lessor agrees to keep the said premises, including the personal property herein described in a state of good repair at the expense of the Lessor, subject to the hereinafter set out exceptions; and lessor shall maintain and keep said premises and said personal property in such condition as to meet the minimum requirements of the State, County, and City Board of Health, including the water heater, septic tank, toilet facilities, and lavatories, as well as the real estate and other personal property herein and hereby leased.

"The lessee agrees to give the Lessor, his agents, heirs or assigns access to said premises for the purpose of making repairs at reasonable times, and if Lessor should fail in so maintaining said property as stated above, then the Lessee may make such repairs and/or maintenance as may be necessary and Lessor shall be liable to the Lessee, his heirs or assigns for any such costs or expenses incurred by Lessor [Lessee] in making such repairs, provided however, that notice shall have been given to the Lessor that such repairs were needed prior to the making of such repairs."

\*   \*   \*   \*   \*   \*

"The Lessee promises and agrees to furnish Fingers for the picker, knives, rubber gloves and aprons for Lessee's employees.

"Any repairs or replacements or other parts or installations not exceeding a total cost of $50 including labor for making such installments may be done by the lessee at the expense of the Lessor; and in that case the Lessor shall pay only the invoice price for such parts for replacement, and the Lessee will not make any charge for his labor for making such repairs when the la-

bor is performed by himself personally."

Other pertinent provisions of the lease are as follows:

"6. Lessor agrees in conjunction with Paragraph 1 above, that the Lessee shall make such on the job repairs as he is capable of doing, and shall make such replacements necessary at that time, not to exceed $50 without the expressed consent of Lessor, and upon Lessee's rendering an itemized statement of such repairs made, to pay to Lessee the invoice cost of such replacements parts and the costs of any labor for installation thereof actually paid by Lessee, but no charge is to be made by Lessee for any labor in making such repairs as Lessee does himself personally."

"11. Upon any default in the premises hereof by the Lessor, the Lessee shall have the election of either vacating the premises within 30 days, after having first given the Lessor written notice of the proposed abandonment, which, when given, shall constitute the beginning of the running of said 30 day period; or Lessee may elect to remain in possession of the premises, and should Lessee remain in possession of the premises through the next rent payment date, without having given said written notice, it shall be presumed that Lessee has elected to remain in said building, and the terms of this lease shall remain in full force and effect at that time and all objections to any such default would therefore be considered and treated as having been waived by the Lessee.

"In the event Lessee elects to abandon the premises upon default or breach of this contract by the Lessor as stated above, the Lessor shall be liable to the Lessee for all cost of such removal and for such additional rent and above the amount herein agreed to that the Lessee shall be required to pay at his new location, for the duration of the term of this lease, or any extension thereof, but not to exceed 23 months in any instance, and not to exceed a total Maximum sum of $1,-500, whichever is the lesser."

The demurrer was predicated upon a construction of the lease agreement and the judgment entry discloses the ground upon which the lower court based its conclusion in sustaining the demurrer as follows:

"The complaint in the case alleges that the State Board of Health required certain corrections to be made in the premises to conform to the minimum requirement of the State Board of Health, that the lessee called on the defendants to make the corrections, that the defendants failed or refused to make or cause to be made such corrections, and that the plaintiff expended large sums of money upon the premises for the sole purpose of meeting these requirements. It is the opinion of the court that the maximum requirement for repairs as set out on page four [Item 6] of this lease agreement is fifty dollars, and that the plaintiff had no authority to make them at the expense of the lessors. It is the opinion of the court that this is the maximum liability for repairs on the part of the lessors.

"It is the opinion of the court that the demurrers are well taken and should be sustained."

The briefs filed here are directed alone to the feature of the lease dealing with lessors' liability with respect to repairs, in the light of those provisions which we have set out above. The sole question presented to us is construction of the lease. The legal proposition advanced by the opposing parties is, in essence, the same, viz.: The intent of the contracting parties to be gathered alone from their written agreement, and this, of course, without the aid of extraneous evidence.

Appellant's contention is that paragraph 6, supra, relates alone to incidental repairs or replacements, repetitive or explanatory of the previous provisions in paragraph 1, and with no effect upon that provision specifically giving to the lessee the right, upon lessors' failure, to make such repairs as might be necessary to comply with health requirements, and to be reimbursed therefor by lessor. It is argued that paragraph 11 is no more than an option to lessee to vacate; be paid for cost of removing from the premises and being relieved of any obligation to pay rent.

We are unable to agree to this. Standing alone, the language first quoted from paragraph 1 would very clearly impose an unlimited liability upon the lessor for necessary repairs, made by the lessee. We think the obvious intent and purpose of paragraph 6 was to fix a limit. Its very wording makes this clear and unequivocal. It says, "Lessor agrees in conjunction with paragraph 1 above. * * *" It applies to the whole of paragraph 1, not to any particular part. We can see no rational reason for the inclusion of paragraph 6 other than as a limitation upon something that had been unlimited. We think that paragraph 11 fortifies this conclusion.

Upon a careful consideration of the lease agreement as a whole, it cannot be said to be ambiguous. In such circumstances there is no room for construction and we have no alternative other than to give it effect as written. Groover v. Darden, 259 Ala. 607, 68 So.2d 28.

There is no suggestion of invalidity in any of the provisions of the lease.

We are of the opinion that the conclusion reached by the trial court is correct and should be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, GOODWYN, MERRILL and COLEMAN, JJ., concur.